64 N.J. Super. 445 (1960)
166 A.2d 402
FIDELITY UNION TRUST COMPANY, A NEW JERSEY CORPORATION, AS TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF LENA EGENOLF, DECEASED, PLAINTIFF,
v.
EGENOLF DAY NURSERY ASSOCIATION OF ELIZABETH, NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 6, 1960.
*448 Messrs. Riker, Danzig, Marsh & Scherer, attorneys for plaintiff (Mr. Edward J. Brown, of counsel).
Messrs. Pollis, Williams & Pappas, attorneys for defendant Egenolf Day Nursery Association (Mr. Phidias L. Pollis, appearing).
Messrs. Darcy & Murray, attorneys for defendants Grace E. Mitchell et al. (Mr. Alex Lazorisak, of counsel).
Mr. George Warren, representative and guardian ad litem.
SIMMILL, J.C.C. (temporarily assigned).
Plaintiff herein, as testamentary trustee under the last will and testament of Lena Egenolf, deceased, has instituted this proceeding for a construction of the will and for the court's instructions as to the trust established thereby.
Lena Egenolf, the decedent, died on May 15, 1942, leaving a last will and testament dated November 2, 1938. Paragraphs 4 and 5 of the will are as follows:
"Fourth: All the rest, residue and remainder of my estate, both real and personal, of whatsoever the same may consist and wheresoever situate, I give, devise and bequeath unto the Fidelity Union Trust Company of Newark, N.J., Arthur M. Birdsall, and my sister, Kathrine Schmidt, in trust, the same to be safely invested and reinvested as provided by law for the investment of trust funds and the income therefrom to be paid monthly to my sister, Kathrine Schmidt during her lifetime. I further direct that should my sister's urgent necessities require, then my trustees shall pay whatever is necessary out of the principal of my estate to meet any unusual, unexpected or urgent necessity of my said sister; * * *
Fifth: From and after the death of my said sister, Kathrine Schmidt, or if she should predecease me, then, on my death, I give the principal of the said trust fund herein provided for the benefit of my said sister, as follows:

* * * * * * * *
All the rest, residue and remainder of the principal remaining in the said trust fund after the specific bequests mentioned in this *449 clause of my will, I direct shall be held in trust by the said Fidelity Union Trust Company of Newark, N.J., and Arthur M. Birdsall, the surviving trustees and the income therefrom be paid monthly to the Egenolf Day Nursery of Elizabeth, N.J. to be applied towards its rent, expenses, maintenance and support. Should the said nursery be abandoned or cease to function or become extinct during the lifetime of my next of kin who are living at the time of my decease, or during the lifetime of any of their children, then and in those events I give the principal remaining in the said trust fund for the benefit of the Egenolf Day Nursery to my said next of kin and their children according to the statutes on descent and distribution. It is, however, my sincere desire and I know it was the desire of my late husband that the said Egenolf Day Nursery should continue to function and to grow from year to year for the benefit of those who may have access to the uses for which it was established. Should said Egenolf Day Nursery continue to function until after the death of my next of kin living at the time of my decease and their children, then and in that event I direct my trustees to pay the principal sum of my said trust fund to the Egenolf Day Nursery absolutely."
The decedent had no children. Her husband and her parents predeceased her. She never had any brothers or sisters except Katherine Schmidt (designated in the will as Kathrine Schmidt), who was born on November 11, 1863 and died on July 1, 1949. Katherine Schmidt was single and had no children born to or adopted by her. The decedent's other next of kin living at the time of her demise are cousins once and twice removed and other distant relatives, all of whom are defendants to this suit.
Subsequent to decedent's death, plaintiff paid the income from the testamentary trust to Katherine Schmidt. Following the death of Katherine Schmidt the plaintiff-trustee has paid and is presently paying the income to defendant Egenolf Day Nursery of Elizabeth, New Jersey (now Egenolf Day Nursery Association of Elizabeth, New Jersey). Said nursery has continued uninterruptedly to function and is actively engaged in the charitable purposes for which it was established.
The plaintiff first seeks a construction of the will and advice as to whether the trust terminated on the death of Katherine Schmidt because Katherine Schmidt was the *450 testatrix's sole "next of kin living at the time of my decease." In order to answer this question the court's first duty is to determine the intent of the testatrix, an intent to be drawn from the language of the will as written taken in context and illuminated by the surrounding facts and circumstances. In re Armour's Estate, 11 N.J. 257, 271 (1953); Burlington County Trust Co. v. Di Castelcicala, 2 N.J. 214 (1949). The court's main concern is to determine intent, not so much from what the testatrix meant to say as it is to determine what she meant by what she did say. New Jersey Title Guarantee & Trust Co. v. Dailey, 123 N.J. Eq. 205 (Ch. 1938); Summit Trust Co. v. McAuley Water Street Mission, 125 N.J. Eq. 505 (E. & A. 1939).
This court is of the opinion that the testatrix, by referring in her will to "my next of kin living at the time of my decease," did not intend to include her sister Katherine Schmidt, the life tenant. Katherine Schmidt is excluded from this class by the context of the will, which clearly demonstrates that she was to be carved out of and excluded from "next of kin." A contrary construction would have the testatrix say in effect in paragraph Fifth, "Upon the death of my sister, I give the income from the residue of my estate to the nursery, and should said nursery continue to exist beyond the death of my sister, I direct my trustees to pay the principal to the nursery. Upon the death of my sister, should said nursery cease to exist during the lifetime of my sister, I direct that the principal be paid to my sister." The incongruity resulting from such a construction alone would be sufficient to hold that the testatrix intended to exclude the life tenant from the class. Zeigenfus v. Snelbaker, 38 N.J. Super. 304 (Ch. Div. 1955); Camden Trust Co. v. Matlock, 125 N.J. Eq. 170 (Ch. 1939); Francisco v. Citizens Trust Co., 132 N.J. Eq. 597 (Ch. 1941), affirmed Francisco v. Bailey, 133 N.J. Eq. 28 (E. & A. 1942); Annotation, 30 A.L.R.2d 395, 407 (1953).
However, this conclusion is fortified by other factors. In paragraph Fifth the testatrix referred to her next of kin *451 living at the time of her decease or "during the lifetime of any of their children." At the time of the execution of the will Katherine Schmidt was 75 years of age, unmarried and childless. The testatrix could not reasonably have anticipated that she would have any children. Also the words "their children" indicate that next of kin was used in the plural, thereby excluding the sister who was the sole next of kin at the time of the execution of the will. Oleson v. Somogyi, 90 N.J. Eq. 342 (Ch. 1919), affirmed 93 N.J. Eq. 506 (E. & A. 1921). In view of the foregoing, the court's answer is in the negative to plaintiff's query as to whether the trust terminated on the death of Katherine Schmidt and whether the nursery is now entitled to the principal.
It is likewise evident that testatrix's primary concern was for her sister Katherine Schmidt, and when her sister had no further use of the income by reason of her death, the object of testatrix's bounty was the nursery, her next of kin receiving nothing as long as the nursery continued to function. If, however, the nursery was abandoned, ceased to function or became extinct, testatrix then desired that her estate be distributed as in the case of intestacy, although she limited such intestacy to those of her next of kin, excluding her sister, who were living at the time of her death and their children. She did not want her estate to be paid even to the object of her bounty, the nursery, should it not be an enduring institution, and she endeavored to see to it that it was an enduring institution by obligating it to function and exist as long as her next of kin and their children, some of whom she would never know, continued to live. If it did continue to so endure, then at the death of the last of them, the nursery was to be paid the principal and the trust would terminate. If it did not continue to so endure, then her next of kin living at her death and their children were to be paid the principal and the trust would terminate. The court finds the foregoing to be the intention of the testatrix.
*452 The defendants, heirs at law and their children, now contend that the gift of the principal to the nursery is invalid and void as it offends the rule against perpetuities because the vesting is suspended during a period measured by lives of persons unborn at the death of the testatrix, namely the children of the next of kin living at the testatrix's death. They assert that they are now entitled to the principal without further ado by reason thereof. Hence the plaintiff-trustee seeks instructions whether the trust has terminated because the gift of the remainder is void and whether the money should be paid to the heirs at law living on May 15, 1942, the date of Lena Egenolf's death. The pertinent section of the will is the last sentence of paragraph Fifth. It provides as follows:
"Should said Egenolf Day Nursery continue to function until after the death of my next of kin living at the time of my decease and their children, then and in that event I direct my trustees to pay the principal sum of my said trust fund to the Egenolf Day Nursery absolutely."
The rule against perpetuities in this State has been established by numerous decisions. In Litcher v. Trust Co. of New Jersey, 11 N.J. 64, 79 (1952), it is stated to be as follows:
"The rule against perpetuities in this State is that `No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.' Burlington County Trust Co. v. Di Castelcicala, supra (2 N.J., at p. 220). It is directed solely against unlawful postponement of the vesting of estates; it is the `uncertainty of the right of enjoyment and not the uncertainty of actual enjoyment' that postpones the vesting of an estate in remainder." (citing cases)
The touchstone of the entire controversy is the word "vest." If the gift vested in the nursery at the time of decedent's death or at the time of Katherine Schmidt's death, it does not offend the rule against perpetuities. If the gift to the nursery did not vest until the death of all the children of *453 the next of kin who were living at the time of testatrix's decease, then it does offend the rule.
The will in question gave the income from the trust to the nursery after the decease of the sister, such income to be paid until the trust terminated. If, as here, the interest accruing on the corpus of the trust is directed to be paid to the beneficiary until it is to receive the corpus, the gift will be deemed vested at the death of the settlor, or at least at the time when the beneficiary commences to receive the interest. Forbringer v. Romano, 10 N.J. Super. 175, 183 (App. Div. 1950); Gifford v. Thorn, 9 N.J. Eq. 702, 708 (E. & A. 1855); Dusenberry v. Johnson, 59 N.J. Eq. 336 (Ch. 1899); Fidelity Union Trust Co. v. Rowland, 99 N.J. Eq. 72 (Ch. 1926). As aptly stated by Jarman, "A gift of interest obviously is difficult to be reconciled with the suspension of vesting because interest is a premium or compensation for the forbearance of principal, to which it supposes a title." 1 Jarman, Wills 802 (6th Am. ed.). See also Clapp, 6 N.J. Practice (Clapp, Wills and Administration), § 304, p. 95 (1950).
However, the next of kin and the guardian ad litem vigorously assert that the last sentence of paragraph Fifth of the will, which directs the payment of the principal of the trust, should be construed as a condition precedent, thereby rendering the remainder contingent and hence not vested. They contend that the continuance of operation of the nursery to the time for payment is a condition precedent and the remainder is contingent on such operation up to the time for payment. They rely on cases in which the gift is conditioned upon the donee's surviving the happening of a future event or when he attains a certain age, and cite Carter v. Bugbee, 92 N.J.L. 390 (E. & A. 1919); Teets v. Weise, 47 N.J.L. 154 (E. & A. 1885); Karcher v. Karcher, 142 N.J. Eq. 349 (Ch. 1948); Post v. Herbert's Ex'rs, 27 N.J. Eq. 540 (E. & A. 1876). None of these cases involve payment of income before payment of the remainder or principal and, hence, they do not oppose the *454 previously discussed principle that where the income is to be paid to the cestui que trust until it is to receive the corpus, the gift will be deemed vested.
To uphold the defendants' contention would suspend the vesting of the estate in limbo contingent upon the happening of an event. The policy of the law is otherwise. In re Buzby's Estate, 94 N.J. Eq. 151 (E. & A. 1923); Camden Safe Deposit & Trust Co. v. Scott, 121 N.J. Eq. 366 (E. & A. 1937), hold:
"The policy of the law requires that legacies and devises in all cases unless clearly inconsistent with the intention of the testator, should be held to be vested rather than contingent."
See also Simpkins v. Simpkins, 131 N.J. Eq. 227 (Ch. 1942). Such a vesting is not in contravention of testatrix's declared intention to insure the continued operation of the nursery; rather it is in line with it. The payment of the principal of the trust is conditioned upon the continued functioning of the nursery. However, the gift of the principal vested at the death of the testatrix or, in any event, not later than the death of the life tenant, subject to being divested if the nursery ceased to function during the lifetime of the testatrix's next of kin living at the time of her death or their children. This is a condition subsequent or a divesting condition. The gift to the nursery is made subject to a condition, namely, the continuance of the function of the nursery, and if it occurred, it would cause a divesting of the estate. It is, however, not a condition precedent which would prevent the initial vesting of the gift to the nursery. See In re Wehrhane's Estate, 41 N.J. Super. 158 (Ch. Div. 1956), affirmed 23 N.J. 205 (1957), and in 4 Scott on Trusts (2d ed. 1956), § 401.2, p. 2864:
"Where property is conveyed or devised upon a charitable trust and it is provided that if the property is not used in the manner directed it shall revert to the settlor or his heirs, the trust is subject to a condition subsequent."
*455 This construction is fortified by the well-settled principle that the courts favor the immediate vesting of estates and will construe a condition to be subsequent wherever possible, rather than precedent, in order to effectuate this, and unless such a construction would be clearly inconsistent with the intention of the testator. In re Buzby's Estate, supra; Peterson v. Neeld, 22 N.J. Super. 469 (App. Div. 1952). It cannot be disputed that the construction made by this court is in furtherance of the testatrix's intention to leave the principal of the trust to the nursery if it continues to operate, and the payment in the future is merely to insure such continued operation.
A further examination of paragraph Fifth of the will reveals that the testatrix, in providing for the gift to her next of kin and their children in the event that the nursery be abandoned or ceases to function, stated, "Then and in those events I give the principal" (emphasis added); whereas the provision for the payment of the remainder to the nursery if it continued to function, stated, "Then and in that event I direct my trustees to pay the principal" (emphasis added) There is a distinction between the use of the words "pay" and "give" concerning the vesting of a gift. When a testator directs his executor to "pay" or "pay over" a future interest, he indicates more strongly than when he introduces the future interest with the words "I give" that he intends to a presently vested interest; for the words "to pay" or "pay over" signify the rendering and giving up to another of that which is due him. 6 N.J. Practice, supra, at § 299, p. 84; Lippincott v. Pancoast, 47 N.J. Eq. 21 (Ch. 1890). This court, therefore, concludes that the legacy to the nursery does not violate the rule against perpetuities and is valid.
Professor Scott explains the view that a gift over from charitable to non-charitable purposes upon the happening of an event which may possibly not occur within the time fixed by the rule against perpetuities, is invalid if the recipient of the non-charitable gift be other than the testatrix, her *456 estate or next of kin. However, a provision whereby the trust property shall revert from the charity to the testator, her estate or next of kin upon the happening of a remote contingency is valid since such provision is not within the rule against perpetuities. 4 Scott on Trusts, supra, § 401.2, p. 2866. In this case, if the nursery was abandoned or ceased to function, there was a reversion to the next of kin of the testatrix. Hence the provision is not within the rule against perpetuities and is valid. See McGill v. Trust Co. of New Jersey, 94 N.J. Eq. 657 (Ch. 1924), modified 96 N.J. Eq. 331 (E. & A. 1924). This court, therefore, further concludes that the contingent gift to testatrix's next of kin living at the time of her death and their children is also valid.
Plaintiff trustee is, therefore, instructed that the trust shall continue to pay monthly the income to the nursery for its rent, expenses, maintenance and support as long as it is not abandoned, does not cease to function or become extinct until the death of the last of testatrix's next of kin living at the time of her death or any of their children. At that time plaintiff trustee shall pay the principal to the nursery and the trust will terminate. If the nursery is abandoned, ceases to function or becomes extinct during the life of any of testatrix's next of kin who were living on May 15, 1942, or during the life of any of their children, plaintiff trustee is then directed to pay the principal to them and to terminate the trust.