The bill in this case was filed for the construction of the will and codicil of Sherman G. Francisco who died in 1924.
Testator left him surviving his widow, two brothers and four children of a deceased brother. His widow died August 10th, 1940. One of the surviving two brothers died in 1938 leaving him surviving five children. Therefore, there were living at the death of testator's widow, one brother and nine nieces and nephews of testator.
The second clause of the will bequeaths testator's residence to his widow.
The third paragraph reads as follows:
"Third: I give and bequeath to my said wife, Harriet Francisco, the use, benefit and enjoyment of the income of the balance of my estate for and during the term of her natural life, and after her death, I give, bequeath and devise said residue of my estate, wherever and of whatever it may be to my next of kin in equal shares in fee." *Page 599 
The codicil to the will reads as follows:
"I hereby give and devise to my wife, Harriet Francisco, absolutely, the burial plot belonging to me located in Mount Hebron Cemetery.
"In all other respects I hereby ratify and confirm my aforesaid will."
The question before me is the construction to be given "next of kin" as used in the third clause of the will.
The executor of Harriet F. Francisco, testator's widow, contends that the widow was the sole next of kin within the meaning of the statute in force in 1924 (2 Cum. Supp. Comp.Stat. p. 2628 § 146-169 ¶ II) and is, therefore, entitled to the whole of the residuary estate.
The complainants, who are three of the four children of Ellsworth E. Francisco, the brother who predeceased the testator, contend that the residuary estate vested in testator's next of kin exclusive of the widow immediately upon the death of Sherman W. Francisco. They contend, therefore, the residuary estate should be divided into six equal parts and that one of said parts should go to each of the four children of Ellsworth E. Francisco; one to the executors of J. Houston Francisco, the brother of testator who died in 1938; and one to Frank M. Francisco, the brother of testator who is still living.
Two different constructions of the will are urged by other defendants. One is that the words "next of kin" as used in said will are intended to refer to the testator's blood relatives at the time of his death. At the time of the hearing the solicitor of Frank M. Francisco offered his client as a witness. The testimony so offered was for the purpose of showing that testator intended the words "next of kin" to mean "nearest blood relative." I am inclined to the opinion that the testimony offered is not relevant. Assuming that it is relevant, it throws no light on the intended meaning by the testator of the words "next of kin."
The other construction urged is that the testator intended to make a gift of the remainder of his residuary estate in equal shares to all those persons who would take as next of *Page 600 
kin under the statute of distribution, the class to be determined as of the date of the death of the life tenant.
Mr. Justice Bodine pointed out in Carter v. Martin, 124 N.J. Eq. 106,108, that, although it is true that the words "next of kin," when used by a testator, have no fixed meaning to be applied in all cases, and that their use raises a question of intention to be determined from an examination of the will as a whole, it is, nevertheless, equally true that the ordinary meaning accorded to the words, in the absence of a different intention, is that they were used to designate those persons who would take under the statute of distribution. Apgar v.Hoffman, 113 N.J. Eq. 233; affirmed, sub nom. Hoffman v.Apgar, 115 N.J. Eq. 171; Trenton Trust Co. v. Gane, 125 N.J. Eq. 389; affirmed, 126 N.J. Eq. 273. It has been urged that the phrase "next of kin" has a primary meaning which encompasses only those in the class nearest of blood to the testator underGuarantee Trust Co. v. Miller, 112 N.J. Eq. 493; affirmed on the opinion below, 115 N.J. Eq. 295. A careful reading of that opinion, which cites the case of Barrett v. Egbertson, 92 N.J. Eq. 118,
makes it clear that the opinion in the Miller Case is in line with the other cases above cited; that is, that the use of words "next of kin" either standing alone or accompanied by other language is always a question of intention to be resolved by the application of the basic rules of testamentary construction. A reading of the whole will leads me to the conclusion that testator intended the words "next of kin" to be understood in their secondary sense; that is, as statutory distributees. Such being the case, it then becomes necessary to determine what person or persons constitute the "next of kin" of Sherman G. Francisco.
As a preliminary step to such determination, the question arises as to whether the vesting of the remainder took place at the death of the testator or whether the vesting was postponed until the death of the life tenant. Our courts favor the immediate vesting of the future interests unless the language or purpose of the will clearly indicates an intention of the testator to postpone it. See In re Buzby's Estate, 94 N.J. Eq. 151; American Builders Corp. v. Galligan, 94 *Page 601 N.J. Eq. 731. It is argued by the executor of Harriet Francisco that the remainder vested immediately upon the death of the testator. If this is so, it would, as Vice-Chancellor Stevens pointed out in Oleson v. Somogyi, 90 N.J. Eq. 342, 344;affirmed, 93 N.J. Eq. 506, give to the will a construction which would have the testator say, in effect, "I give the income of my residuary estate to my wife for life, and if she die, then I give my residuary estate to my wife." If testator had intended his wife to be the sole and absolute taker of the residue he would have said so in plain language such as he used in the codicil in making a full and complete gift of the cemetery plot. See, also,Carter v. Martin, 124 N.J. Eq. 106, 108; Genung v. Best,100 N.J. Eq. 250, 254.
It is clear that testator intended to limit his widow to a mere life estate in the residue which, in effect, excludes her from the class of ultimate beneficiaries described in the will as his "next of kin." It, therefore, appears on a careful reading of the will that the vesting did not take place until the death of the life tenant. The use of the words "in equal shares" is indicative of the intention of the testator that distribution was to be made to more than one person the identity of whom was uncertain until the death of the widow. The rule of construction which here controls is set forth in 2 Williams, Executors (7th Am. Ed.)989, which is cited in the case of Camden Trust Co. v.Matlock, 125 N.J. Eq. 170, 175. In order to completely determine the meaning of the reference made to the above mentioned textbook, it is necessary to examine more than the quotation set forth in the Camden Trust Co. Case. I, therefore, quote from the said textbook the following paragraphs:
"The natural and ordinary meaning of the phrase `next of kin' is next of kin at the death of the persons whose next of kin is spoken of: And this construction ought to prevail, whether the will speaks of the testator's own next of kin, or of the next of kin of some other person, unless the context demonstrates that such a construction would counteract the apparent intention of the testator. And the rule is not varied by the circumstance that the bequest to the next of kin is preceded by a bequest of the fund to a tenant for life, or that the bequest is contingent on an event which may or may not happen.
"Where, indeed, the tenant for life is himself one of the next of kin, it was at one time thought that the rule was inapplicable, and *Page 602 
that the next of kin intended to take must be the next of kin living at the death of the tenant for life. But the law is now settled by a long series of cases, that if there is nothing in the context of the will, or the circumstances of the case, to control the natural meaning of the testator's words, his next of kin living at his death will be entitled; and, that if the tenant for life happens to be one of such next of kin, or to be solely such next of kin, he is not on that account to be excluded. But where the context demonstrates that the person or persons to take under the description of next of kin, is a person or persons, to be ascertained at a future period, or that it is the testator's intention to exclude the tenant for life, from the description of next of kin, the expression must be necessarily understood as meaning the testator's next of kin, living at the death of the tenant for life." (2 Williams, Executors (7th Am. Ed.) 402
([*]986), et seq.)
The same rule is laid down in 3 Page on Wills p. 219 § 1052;p. 227 § 1054, citing Genung v. Best and Carter v.Martin, supra. The rule laid down by the above named text writers and followed by the cases in this state may be stated to be that, although generally a gift to one's heirs or next of kin is taken to mean those who comprise that class on the date of the testator's death, an intention that the heirs or next of kin are to be determined at some other time which appears in the will itself is controlling.
I conclude, therefore, from an examination of the will and codicil of Sherman G. Francisco that the testator intended to dispose of his residuary estate as follows: First, that his widow was to have a life estate only and that upon her death the remainder was to vest in equal shares in such persons as would, on the death of his widow, be the next of kin as that term is used in our statute of distribution. This results in the residuary estate being divided in ten shares, one share going to each of the following next of kin of testator: Frank M. Francisco, his brother; Edward E. Francisco, Sherman W. Francisco, Douglas C. Francisco and Florence H.F. Wood, nephews and nieces, children of Ellsworth E. Francisco, deceased brother of testator; Harry H. Francisco, Mary F. Payne, Vida Naegeli, Margaret A. Francisco and Mildred C. Hopper, nephew and nieces, children of J. Houston Francisco, deceased brother of the testator. It is conceded by counsel, however, that these shares are subject to the rights of creditors and assignees of some remaindermen. *Page 603